# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANIEL NEWMAN,

    Petitioner,

v.                                                 Case No. 13-C-103

JAMES SCHWOCHERT,

    Respondent.

## DECISION AND ORDER

Petitioner was convicted of burglary and armed robbery after a no-contest plea. He alleges that his counsel was ineffective because counsel promised Petitioner would receive a specific sentence of three to five years, which proved to be untrue (he received a much longer sentence). Petitioner also alleges he was sentenced based on inaccurate information, namely, an allegation that he had ripped a necklace off the victim's neck. The state trial court and court of appeals denied relief, and the state supreme court declined to take the case. For the reasons given below, the petition will be denied and the case dismissed.

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), permits habeas relief only if the state-court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law when it "contradicts the governing law set forth in

[Supreme Court] cases." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application of . . . clearly established federal law" when the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. Alternatively, a state court decision involves "an unreasonable determination of the facts" under § 2254(d)(2) only when the state court makes an "unreasonable error." *Morgan v. Hardy,* 662 F.3d 790, 798 (7th Cir. 2011). Here, I conclude that the Petitioner does not meet either of these thresholds.

**I. Ineffective Assistance of Counsel**

Petitioner first argues that his counsel was ineffective for guaranteeing a sentence range that later proved to be far off the mark. *Strickland v. Washington* guarantees that counsel's performance must meet a minimum threshold for competence, and this standard extends not just to trial but to counseling regarding plea negotiations. 466 U.S. 668 (1984). Generally, predictions about sentences that later prove incorrect do not rise to the level of constitutional incompetence because attorneys cannot be expected to perfectly predict the minds of sentencing judges, who often have the ability to impose a wide range of possible sentences. *United States v. Martinez,* 169 F.3d 1049, 1053 (7th Cir. 1999) ("An attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim."). Even so, a significant error regarding a defendant's exposure or an attorney's "guarantee" of a given sentence could give rise to a claim for ineffective assistance.

In postconviction proceedings, the trial court heard testimony and concluded that Petitioner's version of the facts was not credible. Although his attorney did not recall any specific conversations

regarding the expected sentence, he stated he would never have guaranteed a given sentence range because sentencing was within the province of the court. Moreover, the court noted that Petitioner himself stated on the record that he understood that the court was free to enter any sentence it saw fit. Petitioner also had a lengthy history of prior convictions and understood the criminal justice system well. Accordingly, the court found there was no basis to believe he had been promised a specific sentence range that materially impacted his decision to plead guilty. The court of appeals deferred to the trial court's factual finding and concluded there were no grounds to find ineffective assistance of counsel.

## A. Evidentiary Hearing

The state trial court made a factual finding—that Petitioner's story was not credible—and that is the basis on which the denial of relief lay. Factual findings are entitled to "great deference." *Coleman v. Hardy,* 690 F.3d 811, 815 (7th Cir. 2012). "After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* (citing U.S.C. § 2254(e)(1)).

Petitioner argues that recordings of phone conversations between him and his attorney would support his argument. This court denied his request to incorporate those phone records into this action because they had not been part of the state court proceedings. In rare circumstances a federal habeas petitioner may obtain an evidentiary hearing in federal court. 28 U.S.C. § 2254(e)(2). During the postconviction hearing in the state trial court, Petitioner's attorney noted that there were phone recordings of attorney-client conversations and that the state had refused to turn them over. (ECF No. 13-3 at 16-17.) The prison apparently told counsel that it would not release the

3

recordings, nor would it honor a subpoena to produce them. Petitioner now asserts that these recordings would corroborate his story that his attorney promised him a sentence of three to five years.

Under § 2254(e)(1), a petitioner has the burden of rebutting the presumption of correctness of a state court's factual finding by clear and convincing evidence. In *Avila v. Richardson,* decided only recently, the Seventh Circuit reversed the denial of a habeas petition and ordered an evidentiary hearing to address whether the petitioner's counsel had promised him he would receive a five-year sentence. 2014 WL 1797397 (7th Cir. 2014). In that case, the state courts had not addressed the issue because they concluded, contrary to Supreme Court precedent, that the petitioner's guilty plea had waived any challenge to his counsel's performance. Here, the facts are somewhat different because the state courts directly addressed the factual question about counsel's performance, albeit without the specific evidence Petitioner now asks to introduce. Even so, given his counsel's efforts to get the recordings, it cannot be said that Petitioner lacked diligence in trying to get the evidence earlier, and thus § 2254(e)(2) would not appear to be a bar to an evidentiary hearing. *Toliver v. Pollard,* 688 F.3d 853, 860 (7th Cir. 2012).[1]

## B. Prejudice

I conclude that an evidentiary hearing is not required in this case, however, because the record as a whole undermines the Petitioner's claim of ineffective assistance. Under *Strickland* it is not enough that an attorney's performance falls below the constitutional standard; a defendant

---

[1] The state argues that the recordings are irrelevant because Petitioner testified that his counsel gave him the bad advice during an in-person hearing rather than a phone call. That does not appear to be the whole story, however. In fact, if that were the case Petitioner's counsel would not have tried to hard to obtain the phone recordings in the first place.

4

must also show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). At least two reasons prevent the Petitioner from showing prejudice.

### 1. Petitioner Does not Link Bad Advice to Decision to Plead Guilty

First, in order to show prejudice a defendant must demonstrate that he would likely not have pled guilty without receiving the bad advice from his lawyer. Here, Petitioner makes no such effort. In fact, he does *not* say he would have gone to trial. Instead, he argues that he would have accepted an *earlier* plea offer from the state. Apparently the state made him an offer earlier in the proceedings, which Petitioner rejected upon the advice of counsel. He argues that his attorney had some unspecified distractions going on in his life at the time, which clouded his judgment. After steering Petitioner away from accepting an earlier (more favorable) plea deal, he then told him to accept a second deal. It was at this point that Petitioner alleges his attorney guaranteed him a sentence of three to five years. (ECF No. 16 at 7.)

The problem for Petitioner is that, even if his statement is true, he was not prejudiced by his attorney's advice. He claims that had his attorney not given him the guarantee about a three-to-five-year sentence, he would have accepted the earlier plea offer, which was more favorable. The problem is that he alleges the attorney's bad advice came *after* that offer had already been rejected. At the time the bad advice was allegedly given, his only options were to accept the second plea offer or to go to trial. He chose the plea offer. Nowhere does he argue that he would have gone to trial if only he had known that there was no guaranteed sentence. And nowhere does he suggest (nor can he), that some other offer would have been made if he had known the truth and rejected the state's

5

second offer. At its core, the problem is simply that the allegedly bad advice is not linked materially to any decision the Petitioner had to make at the time the advice was given. In such circumstances, a defendant cannot show that his attorney's substandard conduct prejudiced him in any material way.

**2. The Plea Colloquy**

An equally difficult problem for the Petitioner is the fact that he conceded on the record that he had gone over the plea questionnaire with counsel, and the plea form stated that the judge had the ability to sentence up to the maximum. (ECF No. 13-3 at 23:18-22.) Petitioner knew, therefore, that there were no guaranteed sentences because the judge could sentence him up to the maximum penalty allowed by statute. In addition, Petitioner further acknowledged this fact during his plea colloquy with the sentencing judge. During the colloquy the court asked him the following question:

> Do you understand I do not have to follow the recommendation of the district attorney's office, a presentence writer or anyone else. And on the burglary, I could sentence you to 12 and a half years in the Wisconsin state prison. Seven and a half years of confinement. Five years of extended supervision. On the armed robbery, 40 years is the maximum sentence. 25 years of confinement, 15 years of extended supervision. And I could run them consecutive, one after each other. Do you understand that?

(ECF No. 13-2 at 8:6-18.)

Petitioner answered the question, "Yes, sir." (*Id.* at 8:19.)

Here, the colloquy is important for two reasons. First, it undermines his credibility. Petitioner's testimony indicates that he understood that the sentencing judge was not bound by any kind of agreement and could impose any sentence up to the maximum. But that understanding stands in contravention of his allegation that his attorney had told him otherwise. If his lawyer had

6

already promised him a guaranteed sentence, why would Petitioner tell the judge that he knew there were no guarantees? The fact that he agreed that the judge could sentence him to the full range of years—even after the judge noted that the two sentences could be consecutive—substantially undercuts the credibility of Petitioner's version of events.

But that issue is still in the nature of a factual dispute about what Petitioner's counsel told him. Wholly aside from the underlying question of ineffective assistance (i.e., what the attorney actually said), there is the question of prejudice. Here, there can also be no showing of prejudice because the trial court instructed Petitioner that the sentence would be wide open. Petitioner's predicament was thus caused not by his counsel's error (assuming such an error were committed) but by his *own* error in proceeding with the plea despite what the judge told him and what he acknowledged to be true. Having proceeded to plead guilty after learning that the sentence was not guaranteed, he has established beyond any doubt that he would *not* have acted differently had he known the truth. *Id.* Thus, even if his attorney gave him bad advice, his own conduct showed that it was not material advice because he proceeded to plead no contest despite knowing the risks inherent in sentencing. *Scott v. United States,* 2012 WL 5028965, *5 (C.D. Ill. 2012) ("Even if the performance prong [of *Strickland*] were satisfied, Petitioner does not allege sufficient prejudice to be entitled to relief on ineffective assistance of counsel grounds. Because the court thoroughly discussed the plea agreement with Petitioner, and determined he understood the charges against him, the potential sentence, and the rights he was giving up by pleading guilty, any misinformation he may have received from his attorney would have been cured and continued reliance on that misinformation would be unreasonable.")

As the Seventh Circuit concluded in a similar case:

> even if his attorney had told him that the maximum sentence he was facing was only two years, the trial judge informed Paniagua-Bastien that he faced a maximum sentence of 15 years and that his attorney and the government disagreed as to the maximum potential sentence. Therefore, Paniagua-Bastien knew that, irrespective of what his attorney had told him, he was not guaranteed a two-year sentence. Moreover, even if his attorney had not explained the plea agreement to him, the trial judge pointed out important aspects of his guilty plea and confirmed his understanding. Thus, Paniagua-Bastien has not made a showing that he would not have pleaded guilty had his attorney's performance not been deficient as alleged. In other words, he has suffered no prejudice.

*Paniagua-Bastien v. United States,* 108 F.3d 1379, 1997 WL 139809, *2 (7th Cir. 1997). *Cf. Moore v. Bryant,* 348 F.3d 238, 243 (7th Cir. 2003) ("Because nothing in the plea colloquy addressed the length of sentence . . . he was likely to face if he went to trial and lost, that sequence of questions did nothing to ameliorate the adverse impact of his counsel's misinformation.")

The Seventh Circuit's opinion in *United States v. Barker* is instructive. There, the defendant alleged that his attorney gave him bad advice, and that he pled guilty as a result of that information. The court rejected the claim because the district court cured any confusion prior to sentencing:

> In this case, even if advice from Mr. Barker's trial attorney had led to his misunderstanding of the consequences of his guilty plea, any such confusion was cured by the trial court. The court conducted a thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on Mr. Barker's part before the plea was accepted. Furthermore, Mr. Barker admitted that he understood the consequences. Thus the record reflects that Mr. Barker's guilty plea was voluntary and was made with full knowledge of its consequences. Our review of the record convinces us that Mr. Barker has failed to establish that any misinformation by his attorney constituted ineffective assistance and that, but for such misinformation, he would not have pleaded guilty.

*Barker v. United States,* 7 F.3d 629, 633-34 (7th Cir. 1992).

These and other cases stand for the sensible principle that when a competent defendant testifies in open court on the record, he will be taken seriously. The Petitioner's approach would

8

undermine that principle by essentially rewarding defendants for lying under oath (testifying that they understood the judge's sentencing flexibility or that they had received no outside promises) or, at a minimum, for proceeding as though what the sentencing judge said was simply untrue. *United States v. Lambey,* 974 F.2d 1389, 1395 (4th Cir.1992) (en banc) ("If the information given by the court at . . . hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant.") The time for objecting to the sentencing range was during the colloquy, not now. Having proceeded in the face of accurate information provided by the sentencing judge, the Petitioner cannot claim that his attorney's contrary advice prejudiced him. Accordingly, relief on this claim will be denied.

**II. Sentence**

Petitioner also argues that he was sentenced based on incorrect information. Specifically, during the sentencing hearing the prosecutor stated that the Petitioner ripped a necklace off of the victim's neck, which aggravated the seriousness of the crime. Petitioner argues that the victim was incorrect and that the judge improperly sentenced him based on false information. "A defendant who requests re-sentencing due to the use of inaccurate information at the original sentencing must show both that information before the sentencing court was inaccurate and that the sentencing court relied on the inaccurate information in the sentencing." *Lechner v. Frank,* 341 F.3d 635, 639 (7th Cir. 2003).

The court of appeals rejected this claim because Petitioner never objected during the sentencing. *State v. Newman*, 2012 WI App 88, 343 Wis.2d 678, 819 N.W.2d 563, 2012 WL

9

2282558 (Wis. Ct. App. 2012). An appeal is not the proper time to resolve factual disputes raised for the first time (how could the sentencing judge have known about the error if Petitioner did not object?), and so the court concluded the issue was probably waived. Even so, the court went on to find that Petitioner had not shown that the information was, in fact, false. Instead, all he did was demonstrate that the information had not been included in the police report.

To reiterate, in order to succeed in a federal habeas challenge, Petitioner must demonstrate that the state courts unreasonably applied federal law or made an unreasonable determination of the facts. 28 U.S.C. § 2254(d). He does not demonstrate either. The court of appeals noted that due process concerns required sentencing based on accurate information (although it cited state law principles rather than federal ones), and then proceeded to conclude that Petitioner had simply failed to show that the information was inaccurate. *Id.* This was not a misapplication of any federal law or Supreme Court precedent, and neither was it an unreasonable determination of any facts.

The trial court made the factual determination that it had not relied on the information in sentencing the Petitioner. Accordingly, the information about the necklace was not even material to the sentence imposed. "[A] defendant who requests resentencing must establish that the sentencing court also relied on the critical inaccurate information when announcing its sentence." *Promotor v. Pollard,* 628 F.3d 878, 888 (7th Cir. 2010). The armed robbery was an exercise in brutality. The victim testified that Petitioner broke into her house, "grabbed me by my hair and pushed me on the floor," and then pushed her into her room at gunpoint, all in front of her family. (ECF No. 13 at 24-25.) She refused his demand to take off her pants: "my kids were in the room where he, like, hit me with the gun and, like, he tried to tell me to take off my pants." When she

10

refused to take them off, "he hit me in the face with the gun." (*Id.* at 3.) The sentencing judge concluded that the crime was "egregious" and "horrible" and concluded that the defendant had a "horrendous" criminal record of some seventeen convictions. (*Id.* at 45.) The judge further noted that if Petitioner had gone through with a jury trial, "I probably would have had no problem imposing the 32 and a half years of initial confinement that was facing him." (*Id.* at 48.)

During the postconviction hearing, the sentencing judge reiterated his view that the entirety of the crime was egregious and found, not surprisingly, that the information about the necklace was not material to the sentence he imposed. (ECF No. 4 at 11-12.) In some cases, ripping a necklace off of a victim might be an aggravating factor—for example, a street robbery—but here, it paled in comparison to the fact that the defendant hit the victim in the face with a gun and terrorized her in front of her own small children. It did not add anything to the offensiveness of the crime because the crime was already so contemptible. The sentencing judge's conclusion that the necklace was immaterial to the sentence was a reasonable determination of that fact, and it is a fact entitled to great deference. And even if there were no level of deference, Petitioner cannot show that the information was material to the sentence because the gravity and extent of the crime were so grievous. In fact, the essence of his argument continues to be the simple fact that there is no record of him taking the necklace in the police report or the victim's statement. That does not mean it did not occur, however. The prosecutor explained that the victim herself had told him about the necklace, and so the bare statement that there was no record of that happening does not suffice to render the statement inaccurate. For these reasons, relief will be denied on this claim as well.

**III. Conclusion**

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. Because I conclude that reasonable jurists would not debate the outcome here, as to either claim, a certificate of appealability is also **DENIED**. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**SO ORDERED** this   24th   day of June, 2014.

                                              s/ William C. Griesbach
                                              William C. Griesbach, Chief Judge
                                              United States District Court